UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JORGE A. RODRIGUEZ II,<br><br>*Plaintiff*,<br><br>v.<br><br>INDIANA UNIVERSITY SCHOOL OF MEDICINE,<br><br>*Defendant*. | Case No.: 1:23-CV-1697<br><br>**(Jury Demanded)** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff Jorge A. Rodriguez II ("Plaintiff" or "Mr. Rodriguez"), by and through his undersigned attorney, and hereby complains and alleges against the above-named Defendant, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

**INTRODUCTION**

Mr. Rodriguez seeks damages and injunctive relief to remedy violations of his rights secured by the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"). Mr. Rodriguez's academic performance in Indiana University School of Medicine's ("IUSM") Doctor of Medicine ("MD") program was directly impacted by the symptoms of his disabilities, impacts that could be readily ameliorated by reasonable accommodations. In November 2021, following continued academic difficulties, Mr. Rodriguez realized the need for and requested such accommodations. Two months later, without providing Mr. Rodriguez an opportunity to utilize accommodations, IUSM dismissed him. That dismissal was based solely on his performance without accommodations. The dismissal was upheld by

IUSM Dean Jay Hess because Mr. Rodriguez required accommodations. In dismissing Mr. Rodriguez without providing an opportunity to receive accommodations and upholding that dismissal precisely because Mr. Rodriguez required such accommodations, IUSM violated Mr. Rodriguez's rights under the ADA and RA.

Accordingly, he now petitions this Court for redress in the form of injunctive relief, damages, costs and reasonable attorney's fees in relation to the violation of his rights.

## PARTIES

1. Plaintiff, JORGE A. RODRIGUEZ II, is a citizen of Florida and at all times relevant herein was a student at Indiana University School of Medicine's Evansville, Indiana Campus.

2. Defendant, INDIANA UNIVERSITY SCHOOL OF MEDICINE, has its principal place of business in Indianapolis, Indiana and operates several campuses, including the campus located in Evansville, Indiana.

3. At all times relevant hereto, and in all the actions described herein, Defendant's actions took place in Evansville or Indianapolis, Indiana.

## JURISDICTION

4. This Court has jurisdiction over the claims set forth in this action pursuant to 28 U.S.C. § 1331 (federal question), as there exist claims based upon 42 U.S.C. §§ 12101-12213 and 29 U.S.C. § 701, *et seq*.

5. Venue in this jurisdiction is proper pursuant to 28 U.S.C. § 1391(b), as IUSM is located in this District, and all of the events giving rise to Mr. Rodriguez' claims occurred therein.

6. All conditions precedent to the maintenance of this suit and Mr. Rodriguez's claims have occurred, been performed or otherwise waived.

## GENERAL FACTUAL ALLEGATIONS

7. Mr. Rodriguez matriculated at IUSM in the Doctor of Medicine program in the Fall of 2020, in the height of the COVID-19 pandemic.

8. Prior to matriculating at IUSM, Mr. Rodriguez received his bachelor's degree in Biology and Psychology at the University of Florida in 2015 and met all other admissions requirements for IUSM.

9. Additionally, several years before entering IUSM, Mr. Rodriguez was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and Depression.  Mr. Rodriguez's ADHD, without mitigating measures, substantially limits a number of major life activities for Mr. Rodriguez including concentrating, thinking, learning, and reading. Similarly, Mr. Rodriguez's depression can substantially limit his learning, concentration, sleep, and interactions with others.

10. Leading up to his matriculation at IUSM, Mr. Rodriguez successfully managed his ADHD and depression.

11. As a result of the COVID-19 pandemic, IUSM made a number of adjustments to the implementation of the first-year medical school curriculum, including moving many courses online.  Course that had to occur in person were also modified to reduce group work and collaboration between students which.

12. For example, typically first year students in the Human Structures course, which Mr. Rodriguez took in Fall 2020, work in groups of six to focus on an entire cadaver.

13. However, to reduce student interaction, in Fall 2020, the original group of six students was split into three pairs of two. Each pair would dissect a third of their assigned cadaver on alternating days.

14. These changes led to a substantially isolated experience for Mr. Rodriguez, triggering depression, which impacted his performance.

15. Following a poor performance on the first two exams in Human Structures, Mr. Rodrigues hired a tutor, a measure that allowed him to achieve the highest score in the class on the third examination, and to pass the National Board of Medical Examiners ("NBME") subject exam.

16. His success in the latter half of the course, including on the subject exam demonstrating his mastery of the subject, was not enough to outweigh the numerical impact of the first two exam scores, and he did not pass the course.

17. On November 16, 2020, IUSM's Student Promotions Committee ("SPC") placed Mr. Rodriguez on academic monitoring and permitted him to remediate Human Structures during the Summer 2021 session.

18. Over the course of the Fall 2020 semester, Mr. Rodriguez's depression symptoms worsened, and he isolated further, ceased exercising and gained 60 pounds by the end of his first semester, all of which further exacerbated his symptoms.

19. As COVID restrictions lifted, Mr. Rodriguez was able to engage more with other students and his depression symptoms began to improve.

20. As a result, he was able to successfully complete the Spring 2021 semester. He also successfully completed remediation of Human Structures and was removed from academic monitoring on June 28, 2021.

21. However, as he approached the Fall 2021 semester, before classes even began, his depression returned, combined with significant anxiety and insomnia.

22. He proactively reached out to IUSM's Department of Mental Health Services and worked with psychiatrist Dr. Polly Lybrook. Dr. Lybrook prescribed Mr. Rodriguez an antidepressant for his depression and anxiety, and medication for his insomnia. Dr. Lybrook did not, however, mention that disability accommodations were available.

23. The medication helped substantially, and Mr. Rodriguez successfully completed his first course of the second year.

24. However, his struggles increased during the subsequent course, Renal and Respiratory ("R&R"), which he failed.

25. It was during this time in the Fall 2021 semester that Mr. Rodriguez came to the realization that his ADHD was having a substantial impact on his performance. During study sessions with groups of classmates, which had finally resumed, he realized that his speed in reading and answering questions was considerably slower than his classmate, even though he knew the answers and could ultimately explain the rationale as well as his classmates. His peers confirmed that he had a good understanding of the information and material, notwithstanding his grades.

26. As a result, Mr. Rodriguez realized that the lack of sufficient time on tests was the reason his exam scores continually failed to reflect his true understanding and knowledge of the course material. And because course grades were generally based exclusively on exam scores, his course grades therefore similarly reflected the fact that he ran out of time, not his actual knowledge.

27. Typically, as a result of his ADHD and residual impacts of depression, Mr. Rodriguez was left scrambling at the end of every exam, forced to guess or answer at random the last 20 or so of the 100 questions.

28. He was, in essence, starting out with a 20-point deduction on each exam. When able to reach the questions, he answered, on average, between 80-85% of them correct, and thus would have more than passed had he had sufficient time to answer all questions.

29. It was, in fact, his significant mastery of the subject material that allowed him to pass exams at times, despite not having sufficient time, including passing the NBME exam despite having to choose a random answer for over 27 questions as a result of running out of time.

30. While Mr. Rodriguez was able to double down and push through at times, with substantial additional tutoring, he was able to succeed only when he could learn the material better than his peers had to.

31. Mr. Rodriguez was slower to realize that his ADHD was having a significant impact on him, alone and in combination with his depression, in the academic setting due to the circumstances under which he entered IUSM.

32. Many people struggled as a result of the changes wrought by the pandemic, and the shift to different learning modalities. These changes, as well as his depression and anxiety symptoms, both obscured the contribution of his ADHD to his difficulties and exacerbated his symptoms in a way that was not immediate evident. Further, the lack of substantial group work meant that he did not have a consistent comparison to his peers until his second year.

33. Mr. Rodriguez did not initially seek accommodations both because he believed he had successfully managed his conditions in the past and because of the stigma surrounding mental illness and even disabilities such as ADHD in the medical profession.

34. Once Mr. Rodriguez realized that his exam scores reflected his disability, not his knowledge, and that accommodations could remove this barrier, he reached out to his lead advisor, Dr. Keith Powers, in or about early November 2021.

35. Upon speaking with Dr. Powers, Mr. Rodriguez learned that he could receive accommodations for his ADHD, at minimum, through the Disability Accommodations Committee.

36. Mr. Rodriguez contacted his longtime psychiatrist, Dr. Marietta Castellanos, who agreed he should pursue accommodations.

37. Mr. Rodriguez subsequently spoke with Dr. Abigail Klemsz, Assistant Dean for Academic Advising, to discuss his experience and the impact of his disabilities and ask about the process for obtaining accommodations.

38. On November 16, 2021, based exclusively on his academic performance up until that point, the SPC informed Mr. Rodriguez that he was placed on academic probation as a result of his failure of R&R, but would be permitted to remediate the course.

39. Shortly thereafter, Mr. Rodriguez completed Gastrointestinal & Nutrition ("GI&N"), which began after R&R. He ultimately failed GI&N, as well, though only by a single point, with exam scores of 71, 67 and 68, and a final grade of 69. His performance during the course was complicated by the amplification of his depression symptoms as a result of the death of his grandmother, to whom he was very close.

40. Mr. Rodriguez met with the SPC on January 10, 2022, explaining the contribution of his disability to his performance and his plan to address the issues, including the pursuit of accommodations, which he had not previously had the benefit of.

41. At the conclusion of the meeting, the SPC recommended Mr. Rodriguez's dismissal for "failure to make satisfactory academic progress." In a letter on January 11, 2022, the SPC recited the IUSM rule requiring graduation from the four-year program within six year and Mr. Rodriguez's academic history, indicating that the decision was based on that history of his performance, without accommodations.

42. While Dr. Klemsz had advised Mr. Rodriguez that appropriate accommodations for his situation would include extended time on examinations and a quiet environment in which to take them, which had been provided to other students, she subsequently informed Mr. Rodriguez that IUSM could not actually offer any accommodations to him, because the SPC recommended his dismissal from the MD program. In fact, Mr. Rodriguez was not even permitted to apply for the accommodations.

43. Mr. Rodriguez first sought reconsideration of the decision, based on a more detailed outline of the impact of his disabilities, including ADHD, depression and anxiety – without accommodations – on his performance and the direct connection between the lack of accommodations on his exam scores, which were the basis for his course failures, and how the provision of accommodations would address that directly.

44. On February 10, 2022, the SPC informed Mr. Rodriguez it would not grant a reconsideration hearing – that is, even the opportunity to have them reconsider the decision – because the SPC asserted, inaccurately, that, despite Mr. Rodriguez's substantial additional

detail about his disabilities, including his depression, and its impact, he did not present new information warranting reconsideration.

45. Mr. Rodriguez then appealed the decision, and on May 11, 2022, the Appeals Committee upheld the dismissal, without explanation other than to recite his academic history and state that the committee reviewed this history.

46. Mr. Rodriguez then appealed to Dean Jay Hess. Mr. Rodriguez met with Dean Hess, but it appeared from the Dean's limited questions and statements that his mind had already been made up and his decision was based in part on a negative view of Mr. Rodriguez's need for accommodations.

47. For example, in response to Mr. Rodriguez's outline for addressing concerns going forward, including obtaining accommodations, Dean Hess told Mr. Rodriguez that what someone says does not always align with what they do.

48. In addition, Dean Hess stated, in sum and substance, "In the real world, when treating patients, you don't get extra time to do your job."

49. On June 3, 2022, Mr. Rodriguez was informed that Dean Hess upheld his dismissal.

50. IUSM's policies do not mandate dismissal in Mr. Rodriguez's situation. Both the SPC and Dean Hess have discretion in determining the appropriate action.

51. IUSM's Policy for Promotion, Suspension, Dismissal and Withdrawal (the "Policy") proscribes the process for students who fail courses.

52. The Policy includes few absolutes: Students must complete Phase 1, consisting of Year 1 and 2, in no more than three years, explicitly allowing for a leave of absence or a repeat

of one year. Students must complete the entire four-year program within six years. And students in certain circumstances must meet with SPC.

53. Beyond those requirements, the SPC, and Dean, retain discretion in addressing student concerns, and options include the remediation, or repetition, of certain courses, repetition of an entire year, passing a school or national exam, or other corrective action plan.

54. While students failing multiple courses may be recommended for dismissal, they are not required to be.

55. Similarly, students who are not making "satisfactory academic progress" towards their degree may, but are not required to be, dismissed.

56. In fact, when speaking with one of his advisors, Dr. Martin Reeser, about the situation, his performance and history, Dr. Reeser advised Mr. Rodriguez that, based on his experience, it was most likely that the SPC would have him repeat his second year.

57. Mr. Rodriguez was only in his second year at IUSM. He was determined to have successfully completed his first year, following remediation of Human Structures. He could therefore meet the degree progress requirements under the Policy even if he repeated the entire second year.

58. Despite raising his disability and need for accommodations prior to his dismissal, and indeed, prior to his failure of GI&N, IUSM never provided Mr. Rodriguez the opportunity to receive those accommodations and demonstrate his true knowledge and understanding of the material.

59. Instead, though on notice that Mr. Rodriguez's prior performance was a reflection of his disability, in essence the 20-point loss caused by his ADHD on each exam, among other things, not his actual mastery of the material or ability to demonstrate that mastery with

appropriate accommodations, the SPC and Dean Hess relied on that prior performance in dismissing Mr. Rodriguez.

60. Having decided to dismiss Mr. Rodriguez, IUSM offered Mr. Rodriguez the choices between dismissal and withdrawal. Mr. Rodriguez chose to withdraw, in the hopes of reducing the negative impact of his dismissal from IUSM on his ability to pursue medical education elsewhere.

61. As a result of Mr. Rodriguez's dismissal turned forced withdrawal, Mr. Rodriguez has suffered tremendously, physically, mentally, and emotionally, been damaged financially and his career has been delayed by Defendants' wrongful acts.

## FIRST CAUSE OF ACTION

*VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et seq. and SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701, et seq.*
**(DISABILITY DISCRIMINATION INCLUDING FAILURE TO ACCOMMODATE)**

62. Each of the allegations set forth in paragraphs 1 through 61, inclusive, are hereby incorporated by this reference as if realleged fully herein.

63. That Title II of the ADA provides, "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA provides, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...."

64. Title II of the ADA and the RA require covered entities to make reasonable modifications and accommodations unless such accommodations or modifications would

fundamentally alter the nature of the services, privileges, advantages, or accommodations provided by the entity.

65. IUSM is subject to the mandate of the ADA and receives federal financial assistance, as defined by 29 U.S.C. § 794, including through the receipt of federal student aid funds, and, as such, may not discriminate against a person because of his disabilities.

66. Mr. Rodriguez is a qualified individual with a disability. Mr. Rodriguez is diagnosed with ADHD, depression and anxiety, conditions that substantially limit his major life activities including concentrating, thinking, reading, and learning.

67. Mr. Rodriguez is able to meet all qualifications and requirements for enrollment in ISUM's MD program with or without accommodations.

68. IUSM was aware of Mr. Rodriguez's disabilities prior to making the decision to dismiss Mr. Rodriguez, by virtue of his contact with IUSM's Department of Mental Health Services, which serves exclusively students in IUSM's medical education programs, in early Fall 2021, Dr. Powers in early November 2021, Dr. Klemsz, and his statements to the SPC, Appeals Committee and Dean Hess.

69. Mr. Rodriguez further explicitly raised his need for accommodations in or about early November 2021, before failing GI&N and before being dismissed from IUSM.

70. With extended time and a separate location for testing, accommodations IUSM offers to students with Mr. Rodriguez's needs, Mr. Rodriguez would not have failed his exams and thus his courses.

71. IUSM failed to offer Mr. Rodriguez an opportunity to receive accommodations and instead judged his ability to succeed in the program solely based on his performance without accommodations.

72. IUSM's Policy did not mandate dismissal generally or in Mr. Rodriguez's case specifically, and provided the SPC, the Appeals Committee and Dean discretion with respect to a response. Given this discretion, an opportunity to receive accommodations would have been a reasonable modification.

73. Had Mr. Rodriguez been given the opportunity receive accommodations, he would have met all academic standards.

74. Dean Hess further upheld the dismissal of Mr. Rodriguez because he required accommodations in order to meet qualifications, violating Title II and the RA's prohibition on discrimination.

75. That ISUM's discriminatory actions were taken solely because of Mr. Rodriguez's disability, including his disability related symptoms and his need for and use of accommodations.

76. As a direct and proximate result of the unlawful discrimination against Mr. Rodriguez in violation of the ADA and the RA by IUSM, Mr. Rodriguez has suffered and continues to suffer damages academically, financially, and emotionally in an amount to be proven at trial.

77. It has been necessary for Mr. Rodriguez to obtain the services of an attorney to prosecute this action, and Mr. Rodriguez is entitled to an award of attorney's fees and costs of suit incurred herein.

78. Mr. Rodriguez is entitled to injunctive and declaratory relief to obtain readmission to IUSM's MD program free from discrimination, and for an order forbidding IUSM from further perpetuating negative acts against him professionally, personally, academically, and from committing any other acts of discrimination.

## DEMAND FOR JURY TRIAL

Mr. Rodriguez hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in Mr. Rodriguez's favor, and against IUSM, for (a) for general and compensatory damages in an amount to be determined at trial; (b) for injunctive and declaratory relief described herein, as the Court deems appropriate; (c) for pre-judgment and post-judgment interest, as provided by law; (d) for the costs and disbursements of this action, including experts, and such other attorneys' fees, pursuant to statute; and (e) for such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated this 21st day of September, 2023.

**THE BACH LAW FIRM, LLC**

*/s/ Jason J. Bach*
Jason J. Bach, Esq.
Nevada Bar No. 7984
7881 W. Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
jbach@bachlawfirm.com
*Attorney for Plaintiff*