### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JORGE A. RODRIGUEZ, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-01697-TWP-CSW |
| | ) | |
| INDIANA UNIVERSITY SCHOOL OF | ) | |
| MEDICINE, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Indiana University School of Medicine ("IUSM") (Filing No. 41). Plaintiff Jorge Rodriguez ("Rodriguez") was an IUSM student beginning in 2020 until his withdrawal in 2022. Rodriguez initiated this action alleging IUSM discriminated against him and failed to reasonably accommodate his Attention-Deficit/Hyperactivity Disorder ("ADHD") in violation of Title II of the Americans with Disabilities Act ("Title II" or "ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794. For the reasons stated below, summary judgment is **granted in part** and **denied in part**.

### I.    BACKGROUND

The following facts are construed in a light most favorable to Rodriguez. Where disputes arise, all reasonable inferences are drawn in his favor as the non-moving party. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

#### A. IUSM's Disability Accommodations Policy

Rodriguez began his studies as a medical student at IUSM in August 2020. At that time, IUSM's Disability Accommodations Policy provided that students with disabilities may be

considered for accommodations if they: (1) identify themselves to the Assistant Dean for Academic Advising; (2) declare the disability in writing; and (3) submit a request for accommodation.  (Filing No. 43-10 at 3).  In addition, the policy provided:

> It is the student's responsibility to obtain a thorough, written evaluation from an appropriate professional documenting the presence, extent, and ramifications of the disability.  Documentation must include the specific types of accommodations that the professional believes would be most effective to help the student perform the essential functions of the academic program and meet the Technical Standards in the medical school environment.  The professional's name, credentials, and contact information must be included with the supporting documentation.
>
> Students must obtain this evaluation at their own expense and arrange to have the evaluation form and all supporting documentation forwarded to the assistant dean for academic advising. … Upon receiving acceptable documentation, the [Disabilities Accommodations Committee] will review the documentation and consider the student's requests.  If appropriate, the committee will approve a plan for accommodating the student.  The committee may ask for additional information.  If further evaluation is required, it remains the student's responsibility to arrange for that evaluation at the student's expense.

*Id.*  The policy contained further specific guidelines for documenting ADHD, including that the required evaluation "must be performed by a licensed professional with training or expertise in the area," with additional guidelines for what the evaluation should contain.  *Id.* at 7.

## B.  **IUSM's Academic Promotions Policy**

Like all medical students, Rodriguez's academic progress was governed by IUSM's Guidelines for Promotion, Suspension, Dismissal and Withdrawal (the "academic promotions policy").  (*See* Filing No. 43-4).  According to the academic promotions policy, students are required to complete their medical degree within six years of matriculation and must remain in good standing to advance to the next unit of instruction.  *Id.* at 3.  Students not in good standing are referred to the Student Promotions Committee (the "Promotions Committee") to determine whether remediation, academic monitoring, academic probation, or dismissal are appropriate.  *Id.* A student may be academically monitored if, among other things, they fail a course, clerkship, or

elective. *Id.* at 4. A student being academically monitored may then be placed on academic probation for failing an additional course, clerkship, or elective. *Id.* A student who fails two courses in their first or second years may also be recommended for dismissal by the Promotions Committee. *Id.* at 5.

A decision by the Promotions Committee to recommend dismissal will prevent the student from continuing their coursework unless the Promotions Committee determines otherwise. *Id.* However, the student may request reconsideration of the dismissal decision, triggering additional review. *Id.* If the Promotions Committee denies reconsideration, the original recommendation is upheld, and the student may request an appeal to be heard by the Appeals Committee. *Id.* If the subsequent appeal is denied, the student may then request a final meeting with the Dean to discuss the Promotions Committee's decision. *Id.* at 6. The Dean's decision to uphold or reverse the Promotions Committee's decision is final and unappealable. *Id.*

### C. **Rodriguez's Academic Progress**

Rodriguez struggled academically throughout his time at IUSM. In his two years as a student, he failed three courses in total: one course during year one, after which he was placed on academic monitoring and permitted to remediate; and two courses during year two. (Filing No. 45-2 at 2; Filing No. 45-3 at 2).

In November 2021, the Promotions Committee placed Rodriguez on academic probation following his first course failure of his second year (and his second failure since matriculating). (Filing No. 45-3 at 2). Rodriguez reported his academic difficulties to his lead academic advisor, Dr. Keith Powers ("Dr. Powers"), and suggested that his ADHD may be responsible for his inability to complete exams on time. (Filing No. 45-1 at 4 (Rodriguez Dep. Tr. at 24:16–25:20)). Dr. Powers responded by telling Rodriguez that the school would provide accommodations for

students with ADHD and referred Rodriguez to the Disability Accommodations Policy. *Id.* at 25:21-23. Rodriguez reviewed the policy, but he did not follow up with Dr. Powers any further. *Id.* at 26:2-3, 33:19–34:1.[1]

Shortly thereafter, Rodriguez met with the Assistant Dean for Academic Advising, Dr. Abigail Klemsz ("Dr. Klemsz"), to discuss his course failures, overall academic performance, and the requirements to apply for disability accommodations at IUSM. (*See* Filing No. 43-2 at 3–4, ¶ 13). Dr. Klemsz told Rodriguez that he needed a report from his physician and his psychiatrist, as well as results from a "learning specialist examination," to qualify for accommodations. (Filing No. 45-1 at 5, 8 (Rodriguez Dep. Tr. at 26:4-12, 50:3-13)). Dr. Klemsz denies that IUSM's disability accommodations policy requires students to submit a report from a learning specialist to receive an accommodation. (Filing No. 43-2 at 5–6, ¶ 22).

Rodriguez failed his second course of his second year in December 2021. (*See* Filing No. 45-2). On January 10, 2022, he met with the Promotions Committee to discuss his academic progress. (*See* Filing No. 43-8 at 2). Before the meeting, he wrote a letter to provide context for his second course failure, which included the onset of his ADHD symptoms and the death of his grandmother. (Filing No. 45-8 at 2, 6; *see also* Filing No. 43-7). The letter explained that Rodriguez had spoken to his psychiatrist about his issues with completing exams on time and that he was "in the process of attempting to obtain whatever accommodations the [Disability Accommodations Committee] [would] allow [him.]" (Filing No. 45-8 at 7). Nonetheless, on January 11, 2022, the Promotions Committee notified Rodriguez that it was recommending his dismissal from the medical school "for failure to make satisfactory academic progress." (Filing No. 43-8 at 2).

---

[1] Rodriguez also mentioned his ADHD diagnosis to another professor who told Rodriguez that he, too, suffered from the condition. (Filing No. 45-1 at 7 (Rodriguez Dep. Tr. at 34:2-13)).

Nine days later, on January 20, 2022, Rodriguez emailed Dr. Klemsz "to discuss what [he] must do exactly in order to apply for accommodations from the [Disability Accommodations Committee]." (Filing No. 43-9 at 3). Dr. Klemsz responded asking whether Rodriguez had reviewed the disability accommodations policy and saying, "[y]our provider would need to complete the request form. … Once that form is submitted, the committee will review your request at their next meeting which will be February 2, 2022. If your accommodation request is approved, the course management team would be notified of your accommodations for any upcoming exam. We cannot provide any retroactive accommodations." *Id.* at 2. Dr. Klemsz provided links to the disability accommodations policy and the provider accommodations request form in her response, *id.*, and she met with Rodriguez a few days later to walk him through the specifics of applying for accommodations (Filing No. 43-2 at 5 ¶ 18). Despite receiving this information, Rodriguez never submitted any of the forms required to formally request an accommodation for his ADHD. (Filing No. 45-1 at 16 (Rodriguez Dep. Tr. at 113:7-9)).

On February 4, 2022, Rodriguez requested reconsideration of the Promotions Committee's decision. (Filing No. 45-9). He again explained that he was being treated for ADHD and that he had attached a letter from his psychiatrist to confirm the diagnosis. *Id.* at 5. The psychiatrist's letter was not, in fact, attached to his request for reconsideration. Rodriguez insisted that "[i]f I were to be granted accommodations, I would be allowed to take my exam in a separate room with minimal distractions. I would also be given time and a half to complete my exams." *Id.* In Rodriguez's view, those accommodations "would certainly be of great value and aid" and would allow him to "truly finish [his] exams and therefore have a score that better represented [his] understanding and knowledge of the coursework." *Id.*

Rodriguez admits that he did not seek accommodations sooner because he "believed it would lead to a biased opinion of [his] knowledge and competency as a medical student, and as a future physician alike." *Id.* On February 10, 2022, the Committee denied reconsideration. ([Filing No. 45-10](#)).

Rodriguez retained counsel in May 2022 to assist with appealing the dismissal recommendation. (*See* [Filing No. 43-12](#)). His appeal package contained a letter from his counsel and supporting exhibits, including his first- and second-year grades, Rodriguez's various letters to the Promotions Committee, his grandmother's death certificate, and the Promotions Committee's various written decisions. *Id.* The Appeals Committee met with Rodriguez for a final time on May 10, 2022, and ultimately upheld the dismissal recommendation. ([Filing No. 45-11 at 2](#)).

Before launching his final appeal to the Dean, Rodriguez again reached out to Dr. Klemsz regarding the disability accommodations process. On May 23, 2022, Rodriguez emailed Dr. Klemsz asking whether the Disability Accommodations Committee would perform an "informal" review of his request for accommodations given that he was no longer an IUSM student. ([Filing No. 43-14 at 3](#)). In response, Dr. Klemsz confirmed that her office had not received the required accommodations request form from his provider, which would be required for the accommodations committee to review the request at its next meeting in June. *Id.* at 2. The record contains no response to this email.

On May 31, 2022, Rodriguez, through his counsel, submitted his final appeal to Dean Jay Hess ("Dean Hess"). ([Filing No. 45-12](#)). Before meeting with the Dean, Rodriguez provided him all materials from his previous appeals, including his letters to the Promotions Committee. *Id.* During the meeting, Rodriguez discussed his inability to complete his exams on time and attempted to provide Dean Hess with the never-before-seen letter from his psychiatrist, Dr. Marietta

Castellanos ("Dr. Castellanos"). (*See* Filing No. 45-14 at 5 (Hess Dep. Tr. at 30:6-10); Filing No. 45-1 at 22 (Rodriguez Dep. Tr. at 167:1–169:21)). The letter, dated May 9, 2022, explained that Dr. Castellanos had been treating Rodriguez for ADHD since November 2015, and that the condition causes him difficulties concentrating on school assignments and tests. (Filing No. 43-13 at 2). Dean Hess declined to view the letter and explained that "in the real world, when treating patients, you don't get extra time to do your job." (Filing No. 45-14 at 5 (Hess Dep. Tr. at 32:23–33:7)).

Dean Hess adopted the Promotions Committee's decision and upheld the dismissal on June 3, 2022. (Filing No. 45-13 at 2). In making his decision, Dean Hess considered Rodriguez's academic performance, Rodriguez's letters to the Promotions Committee, and the Promotions Committee's written decisions only; he refused to view the letter from Dr. Castellanos or the materials from Rodriguez's counsel. (Filing No. 45-14 at 4 (Hess Dep. Tr. at 27:9–28:22, 30:21–31:2); Filing No. 45-1 at 22 (Rodriguez Dep. Tr. at 169:15-21)).

In lieu of dismissal, Rodriguez opted to withdraw from IUSM. (Filing No. 45-13 at 2). On September 21, 2023, he filed a complaint for disability discrimination under the ADA and the Rehabilitation Act. (Filing No. 1). Rodriguez seeks general and compensatory damages in an amount to be determined at trial; (b) injunctive and declaratory relief (c) for pre-judgment and post-judgment interest, as provided by law; (d) costs and disbursements of this action, including experts, and such other attorneys' fees, pursuant to statute. *Id.* at 14. IUSM's Motion for Summary Judgment (Filing No. 41), is now ripe for the Court's review.

## II.    SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986).  Federal Rule of Civil Procedure 56 provides that summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the Court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).   "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).

A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up). A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## III.    DISCUSSION

Rodriguez asserts a claim for disability discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act.  Title II provides that "no qualified individual with a

8

disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 provides, in relevant part, "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Disability discrimination under the Rehabilitation Act and the ADA can be established in three different ways: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *A.H. by Holzmueller v. Ill. High Sch. Assc.*, 881 F.3d 587, 592-93(7th Cir. 2018) (citation omitted). The statutes and their implementing regulations are "materially identical," so courts "construe and apply them in a consistent manner." *Id.*

The methods of proving disability discrimination under Title I of the ADA—the provisions covering employment discrimination—apply equally to Title II. *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999); *see also Lacy v. Cook Cnty.*, 897 F.3d 847, 853 (7th Cir. 2018) ("The obligation to make 'reasonable modifications' parallels the obligations to make 'reasonable accommodations' in the context of Titles I and III."). Plaintiffs may prove disability discrimination by showing the defendant either acted intentionally on the basis of the plaintiff's disability or failed to reasonably accommodate the disability. *A.H. by Holzmueller*, 881 F.3d at 592 (citing *Washington*, 181 F.3d at 847). To the extent Rodriguez alleges both intentional discrimination and a failure to accommodate,[2] the Court will take each claim in turn.

---

[2] Rodriguez's complaint asserts a single cause of action for "disability discrimination including failure to accommodate." (Filing No. 1 at 11). While the focus of Rodriguez's complaint appears to be that IUSM failed to reasonably accommodate his ADHD, he also alleges that Dean Hess "upheld the dismissal of Mr. Rodriguez *because* he required accommodations." *Id.* at 13, ¶ 74 (emphasis added). Because the parties assume this amounts to a claim

A. **Intentional Discrimination**

To make out a prima facie case of discrimination under Title II and Section 504, a plaintiff must show: (1) he suffers from a disability as defined in the statutes; (2) he is qualified to participate in the program in question; and (3) he was either excluded from participating in or denied the benefit of that program based on his disability. *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015) (citation omitted). The Rehabilitation Act further requires that a plaintiff show the program in which he was involved received federal financial assistance. *Id.* IUSM does not dispute that Rodriguez suffers from a statutorily defined disability or that the medical school program received federal financial assistance. The Defendant also waived the issue whether Rodriguez was qualified to participate in the program by raising it for the first time in reply. *Darif v. Holder*, 739 F.3d 329 (7th Cir. 2014); *Pittman v. Columbus Rural King, Inc.*, 2017 WL 2172100 (S.D. Ind. 2017). The sole question, therefore, is whether IUSM excluded Rodriguez from the program based on his disability.

The language in both statutes requires Rodriguez to prove that "but for his disability, he would have been able to access the services or benefits desired." *A.H. by Holzmueller*, 881 F.3d at 593. In the employment context, the Seventh Circuit has retired the "direct versus indirect" approach in proving causation. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). However, the familiar burden-shifting framework introduced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), remains a helpful guideline for analyzing disability discrimination claims. *See Novak*, 777 F.3d at 974. That framework requires a plaintiff to show: (1) he is disabled; (2) he is qualified to participate in the program; (3) he suffered an adverse action; and (4) nondisabled students were treated more favorably. *Id.* If the plaintiff can establish a prima facie

---

for intentional discrimination, the Court will address the merits of both the alleged failure to accommodate and discrimination based on Rodriguez's alleged disability.

case, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged adverse action. *Id.* If the defendant succeeds, then the defendant "is entitled to summary judgment unless the claimant can present sufficient evidence that the defendant's proffered reason is a pretext for discrimination." *Id.* (cleaned up) (citation omitted).

As noted, IUSM does not dispute the first and second elements. Neither does the Defendant dispute that the recommendation for dismissal was an adverse action. It argues only that Rodriguez cannot make out a prima facie case because he cannot show nondisabled students were treated more favorably, and he failed to prove the decision to recommend dismissal was pretext. (Filing No. 42 at 28–30). Rodriguez counters that the only question is whether the evidence would permit a reasonable factfinder to conclude that his disability resulted in the discriminatory act. (Filing No. 44 at 26). In his view, the following evidence is sufficient to establish discrimination: (1) that some administrators were surprised at the dismissal decision; (2) Dean Hess's statement that accommodations are not available in the real world; and (3) Dean Hess's refusal to consider all of Rodriguez's materials. (Filing No. 44 at 26–27).

This evidence is insufficient to support a finding that Rodriguez was discriminated against because of his ADHD. At most, it shows IUSM failed to accommodate him by engaging in an interactive process to find a suitable accommodation, as discussed in detail below. But there is no evidence from which a reasonable jury could conclude that IUSM dismissed him *because* of his ADHD. To the contrary, it is undisputed that the academic promotions policy permitted dismissal, among other things, as a consequence of failing two classes during the first or second year of medical school. (Filing No. 43-4 at 5). That the Promotions Committee was not *required* to recommend dismissal is irrelevant, especially given that Rodriguez does not point to any nondisabled individuals for whom dismissal was a last resort.

At bottom, even if Rodriguez could state a prima facie case of discrimination, he has not shown that IUSM's reasons for recommending dismissal were pretextual. The Promotions Committee, the Appeals Committee, and Dean Hess all relied on Rodriguez's three class failures over the course of two years in recommending, and ultimately upholding, his dismissal. And while there is evidence that at least one administrator was surprised at the dismissal decision, there is no evidence the Promotions Committee did not sincerely believe dismissal was appropriate given Rodriguez's "sub-par medical knowledge." (*See* Filing No. 45-5 at 2–3). Accordingly, IUSM's Motion for Summary Judgment on Rodriguez's intentional discrimination claim is **granted**.

### B.  **Failure to Accommodate**

The focus of Rodriguez's complaint is IUSM's failure to provide a reasonable accommodation for his ADHD. To succeed on a failure-to-accommodate claim, a plaintiff must establish: (1) he is a qualified individual with a disability; (2) the defendant was aware of the disability; and (3) the defendant failed to reasonably accommodate that disability. *Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014). Only the second and third elements are in dispute here.

#### 1.  **Awareness of the disability**

IUSM first argues summary judgment is warranted on the failure-to-accommodate claim because it is undisputed that Rodriguez failed to provide "official notice" of his disability before failing two classes which justified the recommendation for his dismissal. To the extent the Defendant possessed "informal knowledge" that Rodriguez might have been trying to determine whether he had a disability and what accommodations he may need, IUSM contends the notice element requires more. (Filing No. 42 at 24). By contrast, Rodriguez argues that raising a diagnosis and need for accommodations to a person in a position to react is sufficient to trigger the

Defendant's obligation to consider the disability and request for accommodations.  (Filing No. 44 at 18).

IUSM is mistaken that formal notice of a disability is required to make it aware of a disability.  To the contrary, a plaintiff's "initial duty to inform the [defendant] of a disability … requires *at most* that the [plaintiff] indicate to the [defendant] that she has a disability and desires an accommodation." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005) (emphasis added) (citation and quotation marks omitted).  The undisputed facts show that Rodriguez notified several IUSM officials of his ADHD diagnosis before Dean Hess upheld the dismissal recommendation in June 2022.  More than trying to determine whether he had a disability, prior to his dismissal, Rodriguez stated unequivocally that he was being treated for ADHD by a psychiatrist and requested as accommodations extra time on his exams and a separate room within which to take them.  In particular, he told Dr. Powers in November 2021 he believed his ADHD caused him trouble completing exams on time, and his several letters to the Promotions Committee consistently detailed his ADHD symptoms and how they affected his schoolwork.  He also explained that taking exams in a separate room with "minimal distractions" and receiving time and a half to complete them would give him a better chance at showcasing his true skills.  Viewing the facts in a light most favorable to Rodriguez—as the Court must do—a reasonable jury could conclude that IUSM was aware of his disability before deciding Rodriguez should be dismissed. *Cf. Ekstrand v. Sch. Dist. of Somerset*, 603 F. Supp. 2d 1196, 1208 (W.D. Wis.) ("*Ekstrand I*") ("[N]o real dispute" that defendant was aware of plaintiff's disability when plaintiff told the principal she suffered from seasonal affective disorder), *aff'd in part*, 583 F.3d 972 (7th Cir. 2009).

IUSM insists this notice was insufficient because Rodriguez failed to submit medical evidence of his diagnosis.  (Filing No. 46 at 7).  True, in some cases, plaintiffs have submitted

medical evidence to support their claim of disability in the first instance. *E.g.*, *Steere v. George Washington Univ.*, 368 F. Supp. 2d 52, 56 (D.D.C. 2005). But "[a defendant] cannot shield itself from liability by choosing not to follow up on [a plaintiff's] requests for assistance, or by intentionally remaining in the dark." *Sears*, 417 F.3d at 804. In any case, the evidence demonstrates a material factual dispute as to whether Rodriguez provided medical evidence of his ADHD diagnosis before the final dismissal decision. Rodriguez asserts that during his final meeting with Dean Hess, he attempted to present a letter from Dr. Castellanos to prove she had been treating him for ADHD for the better half of a decade. He testified that Dean Hess "did not want to view" the letter and presented additional evidence that the Dean told him it would have been futile to do so given that physicians aren't given extra time to do their job in real life. (Filing No. 45-1 at 22 (Rodriguez Dep. Tr. at 169: 15-21); *see also* Filing No. 45-14 at 5, 7 (Hess Dep. Tr. at 32:23–33:19, 40:15-23)). Viewing the facts in a light most favorable to Rodriguez, a reasonable jury could conclude that Dean Hess was aware of the official diagnosis before adopting the dismissal recommendation, despite Hess's attempt to shield himself from the information.

Finally, IUSM contends that even if it was aware of the disability, notice was untimely because Rodriguez failed to raise the issue before he failed two classes in the same academic year. (*See, e.g.*, Filing No. 42 at 24). IUSM's own academic promotions policy dooms this argument: the policy gives the Dean final decision-making authority as to whether to adopt or ignore the Promotions Committee's dismissal recommendation. (*See* Filing No. 43-4 at 6). Dean Hess adopted the recommendation on June 3, 2022, after he and the Promotions Committee had been informed about Rodriguez's ADHD diagnosis. The Dean admitted he did not consider Rodriguez's disability in his decision to uphold the dismissal despite reviewing his letters describing his condition and suggesting potential accommodations. Furthermore, and as explained above, there

is a genuine dispute as to whether Rodriguez provided medical evidence of his diagnosis during that final meeting. Therefore, a reasonable jury could conclude that the notice was timely and IUSM knew of the alleged disability before the dismissal decision was finalized. *Compare Steere v. George Washington Univ.*, 368 F. Supp. 2d 52, 56 (D.D.C. 2005) (notice timely where plaintiff submitted medical evidence of his condition after the committee made its dismissal recommendation but before the dean acted on it), *with Leacock v. Temple Univ. Sch. of Med.*, No. Civ.A. 97–7850, 1998 WL 1119866, at *4 (E.D. Pa. 1998) (notice not timely where plaintiff failed to inform the school of her disability before receiving failing grades because receipt of failing grades automatically triggered dismissal).

Having determined that a genuine dispute exists as to whether IUSM was aware of Rodriguez's alleged disability before the final dismissal decision, the Court now determines whether the school failed to reasonably accommodate him.

## 2. **Failure to reasonably accommodate**

After the plaintiff notifies the defendant of his disability, the parties must work together through an "interactive process" to determine the extent of the disability and what accommodations are appropriate and available. *Sears*, 417 F.3d at 805. Because both parties are responsible for determining what accommodations are necessary, the plaintiff must show that the defendant was responsible for the breakdown of this process to succeed on his claim. *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975–76 (7th Cir. 2009) ("*Ekstrand II*"). When there is a communication breakdown, the Court must "isolate the cause of the breakdown and then assign responsibility." *Id.* (quoting *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996)). To do so, the Court should "look for signs of failure to participate in good faith or failure by one of the parties

to help the other party determine what specific accommodations are necessary." *Bultemeyer*, 100 F.3d at 1285.

In cases involving plaintiffs with mental health issues and other nonobvious disabilities, the plaintiff must provide corroborating evidence of the medical necessity of their requested accommodations before the defendant is required to provide a specific accommodation. *Ekstrand II*, 583 F.3d at 976.   However, when the information regarding the need for specific accommodations is ambiguous, the defendant may be required to assist the plaintiff by clarifying what he needs. *See Bultemeyer*, 100 F.3d. at 1285.

IUSM argues Rodriguez was responsible for the breakdown of the interactive process by failing to provide information IUSM reasonably required to assess whether he had a disability and what accommodations might be appropriate.   IUSM argues that the undisputed evidence demonstrates Rodriguez had access to the disability accommodations policy for the duration of his time in medical school, that several professors and administrators took time to explain the policy and accommodations application process to him, and yet he never applied or otherwise provided information that would assist the school in determining next steps.   In IUSM's view, the evidence does not support Rodriguez's belief that he needed a "learning specialist examination" before he could apply for accommodations, so his failure to act on that basis is no excuse for failing to engage in the interactive process.   (Filing No. 42 at 25–28).

In response, Rodriguez makes three arguments.   First, he contends that neither Title II nor Section 504 require an individual to provide certain documentation of their disability to be entitled to accommodations.   He points to other federal regulations to support his contention that requests for documentation must be minimal, and the defendant cannot disregard information from the disabled individual himself.   As relevant here, Rodriguez asserts there is sufficient evidence

from which a jury could conclude that IUSM, through Dr. Klemsz, required him to obtain an expensive and unnecessary "learning specialist" evaluation he could not afford, which prevented him from submitting the required disability accommodations application. (Filing No. 44 at 12–15). Second, he argues that in January 2022, Dr. Klemsz told him he could not apply for accommodations because he was no longer a student. In support, he points to his May 23, 2022, email in which he expresses his "understand[ing] that the [Disability Accommodations Committee] cannot evaluate my request for accommodations due to the fact that I am not currently enrolled in IUSM." (Filing No. 43-14 at 3). Because Dr. Klemsz did not correct that understanding, he says, the evidence creates at least a dispute that IUSM prevented him from applying for accommodations. (Filing No. 44 at 15–16). Finally, Rodriguez argues that no one at IUSM reached out to him after he made them aware of his disability and no one attempted to obtain the missing letter from Dr. Castellanos that Rodriguez mentioned in his correspondence with the Promotions Committee. Once he eventually obtained the letter, he contends Dean Hess refused to review it during their final meeting. *Id.* at 18–22.

As discussed above, the Seventh Circuit has held that the methods of proving discrimination under Title I apply equally to Title II. *Washington*, 181 F.3d at 848; *see also Dadian v. Village of Wilmette*, 269 F.3d 831, 841 (7th Cir. 2001). Title I cases in this circuit require plaintiffs with nonobvious disabilities to provide proof of their medically necessary accommodations to trigger an employer's obligation to provide a specific accommodation. *Ekstrand II*, 583 F.3d at 976; *Bultemeyer*, 100 F.3d at 1287; *Giles v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000). This case—while brought under Title II and applicable to public entities––is no exception.

The regulations Rodriguez relies on do not help him.  They apply to individuals with *obvious* disabilities and prohibit public entities from inquiring about the use of certain aids—like mobility devices or service dogs—to confirm that the disability is genuine.  *See* 28 C.F.R. § 35.137(c)(2); 28 C.F.R. § 35.136(f); 28 C.F.R. § 35.138(h).  Although the obligation to accommodate individuals with disabilities is an "affirmative" one, the help an entity can provide an individual with nonobvious disabilities is limited by what it knows and the evidence it receives.  *See Ekstrand II*, 583 F.3d at 976.  Thus, Rodriguez's general claim that neither Title II nor Section 504 require documentation before a defendant must provide accommodations is unfounded.

Now to the merits.  A close review of the record reveals a genuine dispute about who was responsible for the breakdown of the interactive process.  For clarity, the Court will march through each of Rodriguez's arguments to isolate the cause of the communication breakdown.

First, there is conflicting evidence regarding whether Dr. Klemsz told Rodriguez he needed a "learning specialist examination" to be eligible for accommodations and whether the accommodations policy in fact included such a requirement.  While Dr. Klemsz denies such a requirement existed, the Disability Accommodations Policy does reference a "learning specialist" and places the burden on the student to find and finance a "thorough, written evaluation from an appropriate professional documenting the presence, extent, and ramifications of the disability." (Filing No. 43-10 at 2, 3).  However, even if a reasonable jury could conclude the policy was confusing, Rodriguez failed to communicate his confusion or his inability to obtain the evaluation despite Dr. Klemsz's repeated efforts to provide additional information.  The interactive process requires communication from both parties, and "[a] party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Bultemeyer*, 100 F.3d at 1285.  There is no evidence that after he reviewed the policy and spoke to Dr. Klemsz Rodriguez told anyone at IUSM

he was unable to obtain a learning specialist evaluation or that IUSM had any other reason to know he was having trouble obtaining the necessary documentation. Indeed, he testified that he did not seek assistance in completing the application from anyone at IUSM. (Filing No. 45-1 at 6–7 (Rodriguez Dep. Tr. at 33:19–34:6)). Had he done so, perhaps IUSM could have clarified that all he needed to do was to provide a letter from his psychiatrist whom he was already seeing to initiate the accommodations process.

Second, the evidence does not support Rodriguez's claim that Dr. Klemsz told him he could not apply for accommodations because he was no longer a student. That conclusory testimony is contradicted by other documentary evidence: after the Promotions Committee recommended dismissal, Dr. Klemsz continued to provide Rodriguez with information on how to apply for accommodations. In particular, she told Rodriguez on January 21, 2022, that the committee would review his request at their next meeting in February and that if approved, "the course management team would be notified of your accommodations for any *upcoming* exam." (Filing No. 43-9 at 2) (emphasis added). Additionally, on May 23, 2022, Dr. Klemsz said the provider request form would need to be completed before the disability accommodations committee would review it during the next meeting on June 1, 2022. (Filing No. 43-14 at 2). It is true that Dr. Klemsz told Rodriguez IUSM would not provide "retroactive" accommodations. (Filing No. 43-9 at 2). But her post-dismissal-recommendation emails plainly left the door open for *future* accommodations while making clear that any such accommodations would not apply to *past* exams or courses. Rodriguez's clear misunderstanding of Dr. Klemsz's statement does not justify blaming IUSM for the communication breakdown when there is no evidence that Rodriguez responded to her emails or otherwise made his confusion known.

Rodriguez's final argument, however, saves his claim.  The evidence demonstrates a material dispute about whether Rodriguez attempted to provide medical evidence of his disability to Dean Hess, who refused to view the letter from Dr. Castellanos or any of the materials submitted by Rodriguez's counsel.  By declining to accept evidence of the disability, consider Rodriguez's pleas for help in his letters to the Promotions Committee, or assist Rodriguez in determining what specific accommodations were necessary, a jury could conclude Dean Hess acted in bad faith and obstructed the interactive process.  If the note from Dr. Castellanos or the nature of Rodriguez's disability was ambiguous based on the plethora of materials at his disposal, the burden was on Dean Hess to seek clarification.  *See Bultemeyer*, 100 F.3d at 1285.

Viewing the facts in Rodriguez's favor, a reasonable jury could conclude that IUSM was the party responsible for the breakdown of the interactive process. Therefore, because the Court finds a genuine dispute exists as to whether IUSM was aware of the disability yet failed to accommodate him, the Motion for Summary Judgment on the failure-to-accommodate claim must be **denied**.

### C. <u>Damages</u>

Lastly, IUSM briefly argues that even if a question of fact exists as to liability, Rodriguez is not entitled to monetary damages as a matter of law.  (*See* Filing No. 42 at 30). To recover damages in a Title II action, a plaintiff must identify intentional conduct (and not mere negligence) by a named defendant. *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022); *Lacy v. Cook County, Illinois*, 897 F.3d 847, 862 (7th Cir. 2018). IUSM points out that the Seventh Circuit adopted a "deliberate indifference" standard, which involves a two-part test; (1) knowledge that harm to a federally protected right is substantially likely; and (2) a failure to act upon that likelihood. (Filing No. 42 at 30). ISUM cites the standard articulated in *Moore v. Western Illinois Correctional*

*Facility*, 89 F.4th 582 (7th Cir. 2023).[3]  IUSM argues that Rodriguez must prove indifference that was a deliberate choice and that no evidence exists of such deliberate choice.  *Id*.

Rodriguez fails to respond to this argument in his briefing. Still, IUSM bears the burden of establishing its entitlement to summary judgment and the Seventh Circuit has instructed district courts not to summarily hold for the defendant when the plaintiff fails to respond to the motion on all or some claims. *See Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021)( Even where a nonmovant fails to respond to a motion for summary judgment, the movant "still had to show that summary judgment was proper given the undisputed facts," <u>*Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)</u>, with those facts taken as usual in the light most favorable to the nonmovant.) No where in his briefing does Rodriquez argue knowledge that harm to a federally protected right is substantially likely; and (2) a failure to act upon that likelihood.  Moreover, the Court has granted summary judgment on Rodriguez intentional discrimination claim and there is no evidence in the record that IUSM made a deliberate choice to deny him access to services.

Without any evidence supporting a finding of deliberate indifference, Rodriguez's claim for compensatory damages fails. Considering the facts in the light most favorable to Rodriguez, because he has designated no evidence or argument to show deliberate indifference, summary judgment is **granted** on Rodriguez's claim for compensatory damages.

## IV.    <u>CONCLUSION</u>

For the reasons explained in this Order, Defendant Indiana University School of Medicine's Motion for Summary Judgment (Filing No. 41) is **GRANTED IN PART and DENIED IN PART**. Summary judgment is **granted** with respect to Rodriguez's claim that IUSM discriminated against

---

[3] Although IUSM's briefing is sparse, because it cites pertinent legal authority, the Court will not find this argument perfunctory and undeveloped.

him because of his disability, and his claim for compensatory damages.  The Motion is **denied** with respect to the claim that IUSM failed to reasonably accommodate Rodriguez's disability, and this claim shall proceed to trial or settlement.

      **SO ORDERED**.

Date:   9/19/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Jennifer Westerhaus Adams
Mattingly Burke Cohen & Biederman LLP
jennifer.adams@mbcblaw.com

Jason J. Bach
THE BACH LAW FIRM LLC
jbach@bachlawfirm.com

Hamish S. Cohen
Mattingly Burke Cohen & Biederman LLP
hamish.cohen@mbcblaw.com

Brian Robison Weir-Harden
Mattingly Burke Cohen & Biederman LLP
brian.weir-harden@mbcblaw.com